Hugo von der Hellen v. Commissioner.
Hugo von Hellen v. Commissioner
Docket No. 8578.
United States Tax Court
1946 Tax Ct. Memo LEXIS 107; 5 T.C.M. (CCH) 695; T.C.M. (RIA) 46191; August 9, 1946
*107 Robert T. Jacob, Esq., 917 Public Service Bldg., Portland 4, Ore., and Jerome S. Bischoff, Esq., for the petitioner. T. M. Mather, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The petitioner filed his income tax return for the calendar year 1941 with the collector of internal revenue for the northern district of California. The Commissioner determined a deficiency for this period in the sum of $576.50, based on his finding that during the year in question petitioner was in fact domiciled in Oregon rather than in California, and consequently denied petitioner the right to report his income on a community property basis. [The Facts] The evidence discloses that until the year 1937 petitioner had engaged in the construction business in the States of Washington and Oregon. In 1937 he changed his occupation to that of mining superintendent and for a short time worked in a placer mine in Oregon. Later the same year he moved with his wife to a mining project near Yreka, California. This latter property was owned by the William von der Hellen Mining Company, a partnership, in which petitioner had a 1/5 interest. The other partners were his *108 father, sister, and stepmother. In 1938 petitioner returned to Oregon and remained there until the spring of 1939. In the spring of 1939, petitioner and his wife and infant daughter again went to the mining project in California where he established a permanent residence. Petitioner was in charge of the mining operations and he proceeded to establish a mining community, installing a water system, building bunk and cook houses for the mining crew, cabins for miners with families, and building a house for his own family. Here he and his family resided continuously until October 1942, when the operations of the mining company were closed down as a result of a Presidential order limiting gold mining operations during the war emergency. Petitioner brought with him to California all of his personal belongings, leaving nothing behind at any other location. He owned no real estate other than his interest in the California mining property. He and his wife did maintain a joint bank account in Medford, Oregon, which place was used as a shopping center, but his main banking connections were with a bank in Yreka, California. The mining operations conducted near Yreka required extensive mining *109 equipment and the partners had invested in the enterprise approximately $100,000. The mining property had a life expectancy on proven ground of approximately 10 years and the partnership was continually engaged in the acquisition of additional placer mining rights contiguous to its original location. All the equipment is still on the ground ready for use when gold mining again becomes practicable. The company office was located at Yreka. Petitioner was at the point of purchasing a more permanent house in the town of Yreka so that his daughter might more conveniently go to school when the Presidential order of suspension was announced. With the closing of the mines petitioner and his family moved to a farm owned by his father near Medford, which farm he has since operated, using his own machinery for the purpose. Petitioner still resided there at the time of the trial of this case a few months ago. [Opinion] During the years 1939, 1940, 1941, and 1942 petitioner paid both state and Federal income taxes as a resident of Yreka, California. He was positive in his testimony that in going to California in 1939, he intended to remain there indefinitely and that he had no intention *110 of returning to Oregon or any other place. No testimony was offered other than that of petitioner and we find no reason to doubt his testimony. He had lived a more or less floating existence, going from one construction job to another mostly in the States of Oregon and Washington, and he seems to have had no permanent home prior to going to California. When he left for the mining project in 1939, he took his family and his entire personal belongings and set up housekeeping. He and his associates have a substantial investment in the property which has proven highly profitable. Years of successful operation appeared before him. Both his acts and his testimony are in keeping with the fact that petitioner in 1939 established his domicile and residence in California with the idea of remaining there indefinitely and permanently. We find as a fact that during the taxable year of 1941 petitioner was domiciled in the State of California. Decision will be entered for the petitioner.